**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

KARAN TREHAN,

                             **Plaintiff,**

                 **-against-**

NEVILLE TULI, et al.,

                         **Defendants.**

----------------------------------------------------------------X

**13-CV-08962 (AT)(SN)**

**REPORT AND**
**RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE ANALISA TORRES:**

     Plaintiff Karan Trehan sued the defendants for breach of contract and other causes of action arising from an agreement to invest Trehan's funds in Indian art. The defendants never responded to the complaint. Following a hearing on an order to show cause, the Honorable Analisa Torres referred this case to my docket to conduct an inquest and to report and recommend on damages. Trehan submitted a proposed Findings of Fact and Conclusions of Law seeking a total award of $814,821, plus costs and pre-judgment interest. The defendants failed to respond.

     Based on Trehan's submissions, the Court recommends a total award of $334,900 plus costs and prejudgment interest on $550,000 at an annual rate of nine percent. Trehan's complaint plausibly pleaded that the contract required the defendants to pay him $550,000. This amount should be offset by the approximately $215,100 worth of artworks he received from the transaction. Trehan argues that he should also receive lost profits but has not provided sufficient evidence to prove those damages to a reasonable certainty.

## BACKGROUND

### I.     Factual Background

In light of the defendants' default, Trehan's properly-pleaded allegations are accepted as true, except those relating to damages. See Cotton v. Slone, 4 F.3d 176, 181 (2d. Cir. 1993). The following findings of fact are based on the complaint.

Trehan and defendant Neville Tuli have known each other since the mid-1990s. In 2007, Tuli, a resident of India, met Trehan in New York to discuss art investments. Tuli encouraged Trehan to lend money to Tuli's company Osian's Connoisseurs of Art Private Limited to buy art. Tuli said that he was an expert on contemporary Indian art and would personally select the artworks for purchase. He promised significant profit.

In January 2008, Osian's head of client relations and Trehan negotiated a $550,000 art investment deal. Trehan insisted on a provision requiring Osian's to refund his principal investment with 21 days' advance notice. Osian's sent Trehan the following email offer:

> It was good to learn of your interest in Indian modern and contemporary art, along with other Indian contemporary cultural artifacts such as film memorabilia, political propaganda and advertisements. The investment potential for these works, if selected wisely is significant, ranging from 30 to 40% p.a. The international interest is growing significantly at present, and this is a good time to purchase important art works.

> In that context, given your interest to invest $550,000, we can help you source quality art works from our clients for the said amount before 7 January 2008, which have a very good chance of selling in the various international auctions during May-June 2008.

> Alternately, a preferred option would be to sell to various private international individual and/or institutional clients around the world. These clients will clearly see the value in the artworks given your short-term holding inclination. We shall use our network to facilitate these later transactions, if you so require, provided you give us 21 days prior notice. If you are able to give us 21 days notice anytime after May 31, 2008, we can assure you that your principal

investment of $550,000 will be returned, and that we will make best
efforts to generate an additional annualized return of between 30-
40%.

Compl. at ¶ 13. On January 10, 2008, Trehan accepted this offer by wiring $550,000 to Osian's

through his wholly-owned company Ankar Capital.

By 2009, Trehan had become worried about the financial health of Osian's art

investments. In January 2009, Trehan asked Tuli to return the $550,000 payment. Tuli assured

Trehan that he was "working on your payments." Compl. at ¶ 31. Osian's sent Trehan two July

2009 invoices representing that his payment had been used to buy 14 artworks that were held by

the Osian's Art Fund.

On March 1, 2010, Trehan unequivocally demanded the return of his money. The email

specifically cited the 21-day notice provision in Tuli's offer and requested the return of Trehan's

$550,000 payment "plus profits." Compl. at ¶ 34. Trehan attached invoices purporting to show

that the defendants held artwork purchased with Trehan's funds that was valued at nearly

$1,000,000.

On March 19, 2010, Osian's representative promised to send Trehan artwork that had

been purchased with his payment. Trehan refused to accept the artwork and demanded payment

in cash. During a phone call, Tuli promised to repay Trehan with the proceeds from a real estate

sale, but the sale never took place.

In August 2010, Tuli and Osian's purchased three artworks on behalf of Trehan from

Osian's own collection. The art was valued at $549,973. Tuli promised to send the art to Trehan

to repay the $550,000 investment. Trehan received two of the paintings but did not receive the

third.

Through counsel, Trehan demanded the return of the $550,000. Tuli promised to sell the three paintings at auction and to pay Trehan back in cash. The auction never happened, Tuli never paid, and Trehan sued.

## II.    Procedural History

Trehan's complaint asserted claims for breach of contract, breach of duty of good faith and fair dealing, unjust enrichment, accounting of profits, and disgorgement of profits. The defendants never appeared or answered. The Court ordered the defendants to show cause why a default judgment should not be entered. On May 4, 2016, the Court found the defendants to be in default.

On May 5, 2016, this case was referred to me for report and recommendation following a damages inquest. The Court has reviewed Trehan's submissions and makes the following conclusions of law.

## DISCUSSION

## I.    Legal Standard

Federal Rule of Civil Procedure 55 governs the entry of default judgment. Rule 55 requires a two-step process. First, an entry of default "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the defendant." City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 128 (2d Cir. 2011). Second, the entry of default judgment "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled . . . ." Id.

Before entering default judgment, a district court must determine whether the plaintiff's allegations establish liability as a matter of law. See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). Once the district court has found that default judgment is appropriate as to liability, it

"must determine the appropriate amount of damages." <u>Credit Lyonnais Sec. (USA), Inc. v.</u> <u>Alcantara</u>, 183 F.3d 151, 155 (2d Cir. 1999). Making this determination "involves two tasks: determining the proper rule for calculating damages on such a claim, and assessing plaintiff's evidence supporting the damages to be determined under this rule." <u>Id</u>.

## II.      Jurisdiction

The Court has jurisdiction over this action. The Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is a diversity of citizenship between the parties and the amount in controversy exceeds $75,000. The Court has personal jurisdiction over the defendants because Trehan has shown that the defendants, though located in India, purposefully availed themselves "of the privilege of conducting activities" within New York "thus invoking the benefits and protections of its laws." <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958). According to Trehan's complaint, Tuli came to New York for the preliminary discussions leading to the art investment contract; the defendants made an offer to Trehan knowing that he was a resident of New York; they accepted funds from him; and they sent paintings to his New York address. Thus, the defendants have sufficient "minimum contacts" with New York that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." <u>International</u> <u>Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). And Trehan has shown that the defendants transacted business in New York and that his cause of action arose from such business, thereby satisfying New York's long-arm statute. <u>See</u> <u>Best Van</u> <u>Lines, Inc. v. Walker</u>, 490 F.3d 239, 246 (2d Cir. 2007).

## III.     Breach of Contract

Trehan's complaint adequately pleaded a breach of contract claim. Breach of contract has four elements: "(1) the existence of an agreement, (2) adequate performance of the contract by

the plaintiff, (3) breach of contract by the defendant, and (4) damages." Harsco Corp. v. Segui,

91 F.3d 337, 348 (2d Cir. 1996).

    **A.**    **The Existence of an Agreement**

    "To create a binding contract there must be a manifestation of mutual assent sufficiently

definite to assure that the parties are truly in agreement with respect to all material terms."

Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp., 93 N.Y.2d 584, 589 (1999). A

"written contract may be formed from more than one writing" and a "unilateral offer may be

accepted by the other party's conduct and thereby give rise to contractual obligations." Consarc

Corp. v. Marine Midland Bank, N.A., 996 F.2d 568 (2d Cir. 1993).

    Trehan has adequately pleaded the existence of a contract. In exchange for $550,000, the

January 7, 2008 email offered to assist Trehan in the purchase of Indian art and, upon adequate

notice, to resell the art and make "best efforts" to achieve an annual return of 30-to-40 percent.

Compl. at ¶ 13. The offer also promised the return of Trehan's payment with 21 days' notice.

This email was sufficiently definite to constitute an offer. Trehan accepted this offer by sending

the defendants $550,000 by wire transfer.

    **B.**    **Adequate Performance by Plaintiff**

    Trehan's only obligation under the contract was to pay $550,000. Trehan satisfied that

obligation.

    **C.**    **Breach of Contract**

    The contract obligated the defendants to return Trehan's payment of $550,000 given 21

days' notice and to use best efforts to achieve a 30-to-40 percent profit from the sale of his

artworks. Trehan pleaded that he tendered notice but did not receive full return of his payment.

Trehan has adequately pleaded a breach of the contract's explicit requirement to return the payment.

Trehan argues that he also pleaded a breach of the contract's best efforts clause. "Contractual 'best efforts' clauses require that the bound party work toward the object of the contract to the extent of his total capabilities." Burke v. Steinmann, 03-cv-1390 (GEL), 2004 WL 1117891, at *7 (S.D.N.Y. May 18, 2004) (internal quotation marks omitted). Trehan's complaint plausibly alleges that the defendants *did not* work toward achieving a 30-to-40 percent profit to the extent of their total capabilities. In fact, it can plausibly be inferred that the defendants put no effort into achieving those profits. Accordingly, Trehan has pleaded a breach of the best efforts requirement.

### D.    Damages

Trehan has plausibly pleaded that the contract breach led to damages. The contract obligated the defendants to return Trehan's $550,000 payment upon tender of notice. The defendants failed to return the payment in full, and, thus, Trehan suffered a loss.

## IV.    Damages Calculation

Trehan argues that he is entitled to two categories of damages: damages from the breach of the guaranteed right to repayment and damages from the breach of the best efforts clause. In accordance with Rule 55, the Court has scrutinized the evidence Trehan submitted and concludes that he has shown damages from the breach of the guaranteed right to repayment but has not proven damages from the breach of the best efforts clause.

### A.    Right of Repayment

Trehan has shown that he is entitled to compensatory damages based on the defendants' failure to repay him $550,000. "In calculating the damages due" to Trehan, the court must

"compute the total due plaintiff under the contract, taking into account the costs reasonably saved by plaintiff as a result of the breach and subtracting the amount already paid by defendant . . . ." Am. List Corp. v. U.S. News & World Rep., Inc., 75 N.Y.2d 38, 45 (1989).

Trehan has shown that the defendants delivered two paintings to him. He has submitted an auction estimate by Anuradha Ghosh-Mazumdar, Sotheby's Vice President of the Indian & Southeast Asian Art department, valuing one painting at between $150,000 and $200,000 and the second painting at between $60,000 and $80,000. See ECF No. 24-15 at 2-5. A second valuation, by Deepanjana Klein of Christie's, valued the first painting at $190,000, see ECF No. 42-4 at 7, and the second painting at between 40,000 and 60,000 GBP, or between approximately $52,000 and $78,000, see ECF No. 42-3 at 2. Trehan received a firm offer, through Christie's, of $140,000 for the first painting. See ECF No. 42-4 at 2. In an affidavit, Trehan wrote that he would incur a 6% seller commission, 2% insurance fee, and 2% performance fee, as well as shipping costs, if he sold the paintings at auction. See ECF No. 42-2 at 2.

To reach a reasonable approximation of each painting's value, the Court will disregard the lowest and highest estimates, calculate the median value based on the second lowest and second highest estimates, and then reduce that value by the costs associated with selling the pieces at auction. The first painting's second lowest value is $150,000; its second highest value is $190,000; and $170,000 is a fair approximation of its value at auction. Reducing that figure by the costs associated with auction, the first painting is worth approximately $153,000. The second painting's second lowest value is $60,000; its second highest value is $78,000; and $69,000 is a fair approximation of its value at auction. Reducing that figure by the costs associated with auction, the second painting is worth approximately $62,100. In sum, the total amount of value Trehan received from defendants is $215,100.

Offsetting Trehan's $550,000 loss with the $215,100 in value he received from the transaction yields damages of $334,900.

**B.      Lost Profits**

Trehan also claims that he should be awarded lost profits based on the defendants' failure to use best efforts to achieve a 30-to-40 percent return on his $550,000 investment, but he has not proven these damages. Under New York contract law, a plaintiff can recover lost profits only when they were caused by the breach, can be proven "with reasonable certainty," and "were fairly within the contemplation of the parties to the contract at the time it was made." Kenford Co., Inc. v. Cnty. of Erie, 67 N.Y.2d 257, 261 (1986). Lost profits need not "be determined with mathematical precision," but they must "be capable of measurement based upon known reliable factors without undue speculation." Ashland Mgmt., Inc. v. Janien, 82 N.Y.2d 395, 403 (1993). A plaintiff must provide a "stable foundation for a reasonable estimate" of lost profits, or the claim "fails for uncertainty." Freund v. Washington Sq. Press, Inc., 34 N.Y.2d 379, 383 (1974).

Trehan claims that the defendants used his funds to purchase art in 2008 that appreciated in value by approximately $264,821. In support, he submitted 13 unpaid invoices dating from 2008 and 2009 showing art purchases totaling 39,910,000 INR, or approximately $814,820. See ECF No. 24-10. He claims that these invoices reflect art that he purchased, but a later audit showed that Trehan owed Osian's 17,950,000, or approximately $366,475, for the unpaid invoices. See ECF No. 24-12. By email, Trehan sought to establish that Osian's had applied his $550,000 payment toward the purchase of the invoiced artworks, but Osian's replied that Trehan had never confirmed or approved the invoices. See ECF No. 24-13. In other words, the evidence suggests that the sales never happened.

Even if Trehan could establish that the defendants bought art on his behalf, he has not established that the art appreciated in value. Trehan has not submitted any reports valuing the artwork or any other evidence that art in Osian's collection appreciated in value. Without evidence that the market for contemporary Indian art was rising, Trehan must rely on speculation to conclude that Osian's could have delivered on its promise of a 30-to-40 percent investment return. And because speculation cannot establish "a stable foundation for a reasonable estimate" of lost profits, Trehan's claim "fails for uncertainty." Freund, 34 N.Y.2d at 383.

The Court recommends denying Trehan lost profits damages.

### C.    Prejudgment Interest

This case was brought under New York state law, "and because prejudgment interest is a matter of substantive law, the New York interest rate applies to the interest sought." Adrian v. Town of Yorktown, 620 F.3d 104, 107 (2d Cir. 2010). The statutory rate is "nine per centum per annum," with exceptions not relevant here. N.Y. CPLR §§ 5001, 5004. In a New York contract action, "prejudgment interest must be calculated on a simple interest basis at the statutory rate of nine percent." Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 90 (2d Cir. 1998). Interest is calculated "from the earliest ascertainable date the cause of action existed" until the date of judgment. N.Y. CPLR § 5001(b). Prejudgment interest "is intended to indemnify successful plaintiffs for the nonpayment of what is due to them." Love v. New York, 78 N.Y.2d 540, 544 (1991) (internal quotation marks omitted).

Trehan gave notice demanding repayment of his $550,000 on March 1, 2010. The contract gave the defendants 21 days to remit the funds. Thus, Trehan's cause of action became ascertainable on Monday, March 22, 2010, when the defendants did not refund his money. Further, notwithstanding the receipt of the two paintings, Trehan has not had use of his $550,000

since that date. The value of the paintings is sufficient to reduce the damages the defendants

must pay, but it is not sufficient to compensate Trehan for his inability to use the funds that the

defendants should have returned to him. Accordingly, the Court should award Trehan nine

percent annual interest on the full amount due, $550,000, from March 22, 2010, until the date

judgment is entered.

### D.    Costs

Trehan also seeks costs in the amount of $350 under 28 U.S.C. § 1920. I recommend

awarding him these costs.

### CONCLUSION

I recommend awarding Trehan damages in the amount of $334,900, plus nine percent

annual interest on $550,000 from March 22, 2010 until the date of judgment, and costs in the

amount of $350.

*                    *                    *

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation

to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules

of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service

is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another

party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2).

Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the

chambers of the Honorable Analisa Torres at the United States Courthouse, 500 Pearl Street,

New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R.

Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be

addressed to Judge Abrams. The failure to file these timely objections will result in a waiver of

those objections for purposes of appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

**SO ORDERED.**

_____

SARAH NETBURN

United States Magistrate Judge

DATED:     New York, New York
           August 23, 2016